

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 8:13-CR-160-T-30EAJ

JAMES ARTHUR GOETZ,
a/k/a "Gabriel Espinoza,"
a/k/a "Alexander Sith,"
a/k/a "Egosum Mihi"

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, Acting United States Attorney for the Middle District of Florida, and the defendant, JAMES ARTHUR GOETZ, and the attorney for the defendant, Arnold N. Kriss, mutually agree as follows:

A.    **Particularized Terms**

1.    Counts Pleading To

The defendant shall enter a plea of guilty to Counts One and Six of the Indictment. Count One charges the defendant with mail fraud, in violation of Title 18, United States Code, Sections 1341. Count Six charges the defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

2.    Maximum Penalties

Both Counts One and Six are punishable by a maximum term of imprisonment of twenty (20) years, a fine of up to $250,000 or twice the gross gain caused by the offense, or twice the gross loss caused by the offense, whichever is

Defendant's Initials                     AF Approval _JK_

greater, a term of supervised release of no more than three (3) years, and a special assessment of $100.00, said special assessment to be due on the date of sentencing.

3.     Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts Two through Five and Counts Seven through Seventeen, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

4.     Elements of the Offenses

The defendant acknowledges understanding the nature and elements of the offenses with which the defendant has been charged and to which the defendant is pleading guilty.

The elements of Mail Fraud as charged in Count One are:

First:        That the defendant knowingly devised or participated in a scheme to defraud someone, or obtain money or property, using false or fraudulent pretenses, representations, or promises;

Second:    That the false or fraudulent pretenses, representations or promises were about a material fact;

Third:       That the defendant intended to defraud someone; and

Fourth:     That the defendant used the United States Postal Service by mailing or by causing to be mailed something meant to help carry out the scheme to defraud.

The elements of Wire Fraud as charged in Count Six are:

First:        That the defendant knowingly devised or participated in a scheme to defraud, or to obtain money or property by using false pretenses, representations, or promises;

Second:    That the false pretenses, representations or promises were about a material fact;

Third:       That the defendant acted with the intent to defraud; and

Defendant's Initials           2

Fourth:     That the defendant transmitted or caused to be transmitted by wire some communication in interstate commerce to help cary out the scheme to defraud.

5.     No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge the defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.     Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement. The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.     Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant

Defendant's Initials _____          3

understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b), the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Cooperation - Substantial Assistance to be Considered

The defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in the defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States

Defendant's Initials      4

Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.     Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of the defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10.     Cooperation - Responsibilities of Parties

a.     The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the



fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b. It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1) The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2) The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement. With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly

Defendant's Initials _____   6

been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

Defendant's Initials           7

11.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1(C) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant, or the defendant's nominees. The assets to be forfeited specifically include, but are not limited to a forfeiture money judgment of $378,700.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action.  The defendant also hereby agrees that the forfeiture described herein is not excessive and, in any event, the defendant waives any constitutional claims that the defendant may have that the forfeiture constitutes an excessive fine.

The defendant further agrees that the defendant's interest in all assets that have been administratively forfeited, including but not limited to computers seized as a result of a Federal Search warrant, were properly forfeited and hereby waives any objection he may have had to their forfeiture.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government in this plea agreement.  Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the court make a determination that the government has established the requisite nexus between the property subject to

Defendant's Initials       8

forfeiture and the offense(s) to which the defendant is pleading guilty and enter a preliminary order of forfeiture. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture shall be final as to the defendant at the time it is entered, notwithstanding the requirement that it be made a part of the sentence and be included in the judgment.

The defendant agrees to forfeit all interests in the properties described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

The defendant further agrees to take all steps necessary to locate property and to pass title to the United States before the defendant's sentencing. To that end, the defendant agrees to fully assist the government in the recovery and return to the United States of any assets, or portions thereof, as described above wherever located. The defendant agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed

Defendant's Initials _____          9

beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; then the United States shall, at its option, be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above. This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture.

## B. Standard Terms and Conditions

### 1. Special Assessment and Fine

On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Court, and due on date of sentencing. The defendant understands that this agreement imposes no limitation as to fine.

### 2. Supervised Release

The defendant understands that the offenses to which the defendant is pleading provide for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.     Sentencing Information

The United States reserves its right and obligation to report to the Court
and the United States Probation Office all information concerning the background,
character, and conduct of the defendant, to provide relevant factual information,
including the totality of the defendant's criminal activities, if any, not limited to the
count(s) to which the defendant pleads, to respond to comments made by the
defendant or the defendant's counsel, and to correct any misstatements or
inaccuracies. The United States further reserves its right to make any
recommendations it deems appropriate regarding the disposition of this case, subject to
any limitations set forth herein, if any.

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii),
the defendant agrees to complete and submit, upon execution of this plea agreement,
an affidavit reflecting the defendant's financial condition. The defendant further agrees,
and by the execution of this plea agreement, authorizes the United States Attorney's
Office to provide to, and obtain from, the
United States Probation Office, the financial affidavit, any of the defendant's federal,
state, and local tax returns, bank records and any other financial information concerning
the defendant, for the purpose of making any recommendations to the Court and for
collecting any assessments, fines, restitution, or forfeiture ordered by the Court.

4.     Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor
bound by this agreement. The Court may accept or reject the agreement, or defer a

Defendant's Initials _____        11

decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. The defendant further understands and acknowledges that any discussions between the defendant or the defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, the defendant will not be permitted to withdraw the defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5.   Defendant's Waiver of Right to Appeal the Sentence

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth

Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

6. <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring the defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

7. <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of the defendant's entry of a plea of guilty pursuant hereto.

8. <u>Voluntariness</u>

The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and the defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges the defendant's understanding of the nature of the offense or offenses to which the defendant is pleading guilty and the elements thereof, including the penalties provided by law, and the defendant's complete

Defendant's Initials  13

satisfaction with the representation and advice received from the defendant's undersigned counsel. The defendant also understands that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that the defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against the defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in the defendant's defense; but, by pleading guilty, the defendant waives or gives up those rights and there will be no trial. The defendant further understands that if the defendant pleads guilty, the Court may ask the defendant questions about the offense or offenses to which the defendant pleaded, and if the defendant answers those questions under oath, on the record, and in the presence of counsel, the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement. The defendant also understands that the defendant will be adjudicated guilty of the offenses to which the defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9.     Factual Basis

The defendant is pleading guilty because he is in fact guilty. The defendant certifies that he does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt:

Defendant's Initials _____          14

## FACTS

Defendant James Arthur Goetz is an American citizen born in New Jersey in 1980. During the period from 2004 through at least June 2, 2010, he lived in Lakeland, Polk County, Middle District of Florida. He incorporated Sunshine Financial Group, LLC (hereinafter "SFG") in Florida on May 26, 2005. SFG advertized itself as a Wyoming company. In or about 2006 the defendant ~~incorporated~~ PURCHASED Grileck International, SA (hereinafter "GI") ~~in Uruguay~~ and advertised it as a Uruguayan corporation allegedly founded in 2005 and offering personal services in financial and international arenas including investments, private banking, and portfolio management. GI was also advertised as licensed to do banking in Uruguay, Panama, and the United States. In or about January 2007 the defendant established Montana Holdings, Inc. in Panama through Sovereign Management Services, S.A. On or about April 2, 2007 the defendant established an account (Account No. 10163) in the name of Grileck International, S.A. with the Caye International Bank LTD (hereinafter "CayeBank"), located in San Pedro, Ambergris Caye, Belize. On or about July 24, 2007, the defendant, using the alias of "Egosum Mihi," authored a Wikipedia encyclopedia page on the internet concerning GI which ~~falsely~~ claimed GI to have been founded on June 8, 2005 in Montevideo, Uruguay as an investment and banking organization in addition to numerous other activities. At various times during 2008 and 2009, the defendant represented himself to be the General Manager, President, and/or Principal Owner of GI.

In March 2007 the defendant was introduced to an individual who lived in Miami, Florida with the initials J.J.P. at an information session of the Freedom Club USA (FCUSA), a private club whose mission statement is "to guide members to an abundant life and attract financial, health, emotional and spiritual freedoms - enough to be able to give freely and help others through inner awakening." The defendant had advised those present about investment opportunities with Grileck International and SFG stating that GI was a company based out of Uruguay with offices in Panama, Belize and Barbados. In early July 2008 J.J.P. received an email from the defendant using the alias of "Gabriel Espinoza," who represented himself as a representative of GI/SFG and offered the opportunity to invest money for a 4 month timed investment with a guaranteed 5% monthly return on the investment. Remembering Goetz and the information from the FCUSA meeting regarding GI, J.J.P. responded positively to the solicitation and began email correspondence with "Gabriel Espinoza" regarding the proposed investment opportunity. J.J.P. agreed to invest money in the timed investment guaranteeing a 5% per month return and on July 17, 2008, based on directions via email from "Gabriel Espinoza," he forwarded a personal check via United States Mail in the amount of $160,000.00 to Sunshine Financial Group, 4798 South Florida Avenue #124, Lakeland, Florida 33813. This address is actually a mail box controlled by the defendant in "The UPS Store," a business that rents private mailboxes.

Defendant's Initials _____     16

Upon receipt of J.J.P.'s $160,000.00 check, the defendant opened a Washington Mutual Bank (WMB) account on July 18, 2008 in Lakeland, Florida, account no. ******1918 (hereinafter "WMB 1918") and deposited the check.

On August 4, 2008, the defendant, using the alias "Alexander Sith," sent an email to J.J.P. as a representative of Grileck International and outlined the terms of J.J.P.'s investment which stated that it was a 4 month minimum investment paying 5% profit each month.

On August 7, 2008, the defendant, again using the alias of "Alexander Sith" representing GI, emailed J.J.P. instilling confidence in the GI investment.

On August 13, the defendant transferred $50,000 from WMB 1918 to another WMB account controlled by him and then wired the $50,000 to a bank in England.

On September 30, 2008 the defendant withdrew $100,000 from WMB 1918 and sent a cashier's check for that amount, payable to Nexco LLC, to an individual with the initials A.D. to invest in BPI movie productions.

On November 13, 2008, the defendant withdrew $5,000 from WMB 1918 and deposited it into another WMB account under his control, Poseiden Group account no. ******6828 (hereinafter "WMB 6828") .

On December 3, 2008, the defendant withdrew $5,010.51 (the last of the funds minus 1 cent) from WMB 1918 and deposited it into WMB 6828.

At the end of the 4 month timed investment, J.J.P. emailed defendant Goetz inquiring how to receive the interest/profit for the 4 months and if he could

continue with his investment and continue earning interest at the same rate. The defendant emailed J.J.P. that A.D. was responsible for the 4 month timed investment. When J.J.P. contacted A.D., he was told that A.D. had no knowledge of any J.J.P. investment and that he had received an investment from defendant Goetz directly without reference on where the money came from. Defendant Goetz then discontinued any communication with J.J.P. To date, there has been no return from BPI movie productions on the Goetz investment of $100,000.

Computer forensics of computers recovered incident to the execution of a federal search warrant at defendant Goetz's show that the emails sent from Goetz, "Gabriel Espinoza," and "Alexander Sith" to J.J.P. were all sent from Goetz's computer.

J.J.P. has never received his original $160,000 investment or the promised interest from the defendant, GI, or SFG, nor has he received any of the promised GI portfolio account information concerning his investment.

Also in 2008, a trustee with the initials R.L. for Natural Solutions Foundation (hereinafter "NSF") was introduced to defendant Goetz and GI by a member of FCUSA. NSF is a non-profit organization incorporated in Nevada whose goal is "to support advanced healthcare and health freedom in America and around the world by educating members of the US Congress, other world legislators, agencies and decision makers." During the initial phone call from defendant Goetz to R.L., the defendant stated he was the president and principle owner of Grileck International (GI) and that GI was a bank with its Charter in Uruguay offering banking services in Uruguay, Panama, and the United States. The defendant also represented himself as a



licensed banker and that if NSF used his bank, he promised to make a substantial donation to the NSF.

Believing that GI was a legitimate financial entity doing business in Panama, R.L. and other trustees for NSF decided to deposit money with GI pending a contemplated purchase of property in Panama by the organization.

On August 14, 2008, based upon emailed instructions from the defendant, R.L. wired NSF funds totaling $100,000 from their account at JP Morgan Chase to Grileck International Account Number 10163. What R.L. didn't know was that she was sending the money to Caye International Bank, Ltd. located in San Pedro, Ambergris Caye, Belize. That wire transfer was followed with two wire transfers of $53,000 and $18,000 on August 15, 2008, and $33,200 and $14,500 on October 3, 2008, from JP Morgan Chase to Grileck International Account Number 10163 for a total of $218,700.

The defendant communcated with R.L. via numerous emails using his name, James Goetz, as well as under his aliases "Gabriel Espinoza," and "Alexander Sith," all representing GI.

In December 2008, in order to make the real estate purchase in Panama, R.L. placed an order via email with "Alexander Sith" (defendant Goetz) to have the money wired from the NSF GI account to their agent in Panama handling the real estate deal. This request was allegedly done but the transfer never got to the agents bank account in Panama and NSF was notified by "Gabriel Espinoza" (defendant Goetz), that the funds were never returned to GI and thus were lost. In fact, the funds were still in the defendant's CayeBank Account No. 10163.

Defendant's Initials  19

On February 20, 2009, based upon defendant Goetz's directions, CayeBank transferred $194,960 from Account No. 10163 to WMB account no. ******2033 (hereinafter WMB 2033) controlled by the defendant, and $10,000 to the Montana Holdings account with HSBC Bank in Panama City, Panama. Also based upon defendant Goetz's directions, CayeBank transferred $7,515 on February 27, 2009 and 6,153.59 Swiss Francs on March 4, 2009 from his Account No. 10163 to two different bank accounts with Barclay Bank in London, England.

On February 23, 2009, the defendant withdrew the $194,960 from his WMB 2033 account and deposited it into his WMB 1918 account and a day later withdrew $185,000 from that account and deposited it into WMB 6828. He then immediately, February 24, 2009, again withdrew the $185,000 from the WMB 6828 account and deposited it into a WMB wire account under his name and wired $5,000 to his father, Arthur Goetz, and $180,000 to Universal Consulting Resources LLC. The remainder of the $194,960 that defendant Goetz had transferred into his WMB 1918 account ($9,960) was comingled with other funds and withdrawn over time.

NSF has never recovered the $218,7000 that it gave over to defendant Goetz through GI.

10.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or the defendant's attorney with regard to such guilty plea.

11.  Certification

The defendant and the defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that the defendant fully understands its terms.

DATED this _14th_ day of _August_, 2013.

A. LEE BENTLEY, III
Acting United States Attorney

_____
JAMES ARTHUR GOETZ
Defendant

By: _____
DONALD L. HANSEN
Assistant United States Attorney
Senior Litigation Counsel

_____
ARNOLD N. KRISS
Attorney for Defendant Goetz

_____
SIMON GAUGUSH
Assistant United States Attorney
Chief, General Crimes Section